<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————

|                              |   |                                      |
|------------------------------|---|--------------------------------------|
| CHERYL CIDERN,               | : |                                      |
|                              | : |                                      |
| Plaintiff,                   | : | Civil Action No. 14-308 (MAS) (LHG)  |
|                              | : |                                      |
| v.                           | : |                                      |
|                              | : |                                      |
| STEPHENS AND MICHAELS        | : | **MEMORANDUM OPINION**               |
| ASSOCIATES, INC. and LELAND  | : |                                      |
| PAVOLL, ESQ.,                | : |                                      |
|                              | : |                                      |
| Defendants.                  | : |                                      |

———————————————————

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendants Stephens and Michaels Associates, Inc. ("SMA") and Leland Pavoll, Esquire's ("Pavoll") (collectively, "Defendants") Motion for Summary Judgment. (Defs.' Mot., ECF No. 20.) Plaintiff Cheryl Cidern ("Plaintiff" or "Cidern") filed opposition to the motion. (Pl.'s Opp'n Br., ECF No. 25.) This matter also comes before the Court upon Plaintiff's Motion for Summary Judgment. (Pl.'s Moving Br., ECF No. 21.) Defendants filed opposition to the motion. (Defs.' Opp'n Br., ECF No. 23.) The Court heard oral argument on the motions. (ECF No. 26.) The Court has carefully considered the parties' submissions and positions advanced during oral argument. For the reasons stated below, and for other good cause shown, Plaintiff's motion is granted in part, and denied in part, and Defendants' motion is denied.

## I.    <u>BACKGROUND</u>

The parties agree that the facts are not in dispute and jointly stipulated to the following material facts:

1.  Defendant Stephens and Michaels Associates is a debt collection agency located in Salem, New Hampshire.
2.  Plaintiff Cheryl Cidern's [sic] an individual currently residing in Brick, New Jersey.
3.  On September 25, 2013, an account belonging to Plaintiff was placed with SMA for collection.
4.  SMA's account notes reflect that an initial demand letter was sent to Plaintiff's address on September 25, 2013.
5.  The account notes also reflect that SMA attempted to contact Plaintiff throughout September by phone in an effort to collect upon the account.
6.  SMA's account notes reflect that a demand letter was sent to Plaintiff's address on October 25, 2013.
7.  SMA's account notes reflect that a collection call was made to the Plaintiff on November 5, 2013.
8.  SMA's account notes do not reflect that any subsequent calls or letters seeking the payment of monies from the Plaintiff were made after November 5, 2013.
9.  On November 5, 2013, Plaintiff contacted SMA to inquire about the October 25, 2013 letter, claiming that "I have not gotten any notices at all for this." Plaintiff also stated that "I know that there was a prior bill, um, that was at a collection company, that they ended up, we ended up resolving. I have a paid in full notice, um, from the hospital that I gave to the collection company and they said that [sic] were going to send it back to the hospital then because they didn't know why they were given it. Um, when I faxed them over the notice, the paid in full from the hospital she didn't understand why it was given to them to collect on. So, I have a feeling that this is the same notice again, that they, I guess yet again sent again to another collection company, um but, let me find out or look at my records. I am not at home right now to do that, but I'll give a call back if it is in fact the deal with it."
10. On November 6, 2013 the Plaintiff contacted SMA and asked whether the October 25, 2013 [sic] was the first letter they sent. SMA replied "only the one was sent, we were just hired." Plaintiff also stated that the bill "was in fact taken care of" and that "I have a zero balance letter showing that." SMA replied "Oh, you can just fax that over to us, well [sic] confirm it's the same account and get it closed right out for you."
11. Plaintiff did not send to SMA the zero balance letter.
12. On November 14, 2013, Ari Marcus, Esq. ("Marcus"), counsel for Plaintiff, contacted SMA requested [sic] to speak with in-house compliance for SMA. Marcus was put in contact with Leland Pavoll, Esq., the in-house counsel for SMA.
13. On that date, Plaintiff, through her counsel Marcus, alleged to Pavoll that SMA violated the FDCPA by failing to provide the Plaintiff with the proper validation notice.
14. Pavoll provided evidence to Marcus that would help substantiate SMA's allegations that a previous letter was sent to the Plaintiff sometime in September.

15. From November 14, 2013 through November 25, 2013, Marcus and Pavoll exchanged e-mail correspondence.

16. On November 26, 2013, Marcus and Pavoll spoke via telephone regarding Plaintiff's allegation that SMA failed to send an initial demand letter.

17. From November 27, 2013 to December 9, 2013, Marcus and Pavoll continued to exchange e-mail correspondence regarding Plaintiff's allegation that SMA failed to send an initial demand letter.

18. From November 14, 2013 through December 9, 2013 a total of nineteen emails were exchanged between Marcus and Pavoll.

19. Marcus and Pavoll did not communicate between December 10, 2013 and December 29, 2013.

20. On December 23, 2013, Pavoll contacted the Plaintiff directly via telephone.

21. The conversation was as follows:

| | |
|---|---|
| Leland Pavoll: | . . . I'm calling to speak with Chery Cidern. |
| Cherly Cidern: | This is. |
| Leland Pavoll: | Uh, hi Cheryl. My name is Attorney Leland Pavoll with Stephens and Michaels. Uh, my experience in this account, you at one time filed a Complaint – |
| Cheryl Cidern: | Okay. |
| Leland Pavoll: | - for . . . Oceans Medical Center. |
| Cheryl Cidern: | Okay. |
| Leland Pavoll: | Uh, treatment date was, uh, February 22, 2010. |
| Cherly Cidern: | Okay. |
| Leland Pavoll: | Okay, so the complaint's been, um, responded to and resolved some time ago, uh, looks like we received the complaint back in November, uh, so that's not too long ago, but, um, I'm calling right now to find out, uh, I guess you had indicated that you have a zero balance letter for this account. |
| Cheryl Cidern: | Yes I do, which was given, mm hmm. Yeah which has been turned, which has been given three or four times already and for whatever reason doesn't seem to, to be working. Um, Ari Marcus had forwarded it I believe, to your office. It was originally given from Ocean Medical Center – |
| Leland Pavoll: | Oh yeah – |
| Cheryl Cidern: | - it was originally given to the first collection company, um, yeah, I mean at this point it's gotten ridiculous, um. |
| Leland Pavoll: | Yeah, I've dealt with Ari. He never forwarded it to me. I, I didn't realize that this is, uh, that account, but, if you can forward it to me, um, I can at least get it, um, to the owners, CF Medical, and, um, have them either notate it correctly that this is disputed. |
| Cheryl Cidern: | Well they did that once before. The original collection company forwarded it to them and told them that I had a zero balance along with the original check that was returned to me saying there was a zero |

|                    |                                                                                                                                                                                                                                 |
|--------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                    | balance, and they said to me we're going to forward it back to Ocean Medical, Ocean Medical should then zero it out. Apparently Ocean Medical then turned around and forwarded it to you, you or you bought, you bought – |
| Leland Pavoll:     | We, yes, Ocean Medical would have sold it to, um, –                                                                                                                                                                              |
| Cheryl Cidern:     | To your office.                                                                                                                                                                                                                  |
| Leland Pavoll:     | Yes, to CF Medical who then placed it in our office, um –                                                                                                                                                                        |
| Cheryl Cidern:     | Okay, well it was a debt that should never have been forwarded to you.                                                                                                                                                           |
| Leland Pavoll:     | Right, right. So, we since, I've been dealing with Ari –                                                                                                                                                                         |
| Cheryl Cidern:     | Mm hmm.                                                                                                                                                                                                                          |
| Leland Pavoll:     | - we've, everything's been on hold on the account, um, and I just was wondering if, how I can help you at this point. I mean, we'll close it down, but, you know, the concern is, is that this doesn't happen again to you and that's what I told Ari too. |
| Cheryl Cidern:     | Correct. Okay.                                                                                                                                                                                                                   |
| Leland Pavoll:     | Um, so –                                                                                                                                                                                                                         |
| Cheryl Cidern:     | Have you spoken to Ari or why are you –                                                                                                                                                                                          |
| Leland Pavoll:     | Yes I have, I have, I have, uh, he, I don't want to, you know, get involved at all between you and him also, uh, but I do not have that letter.                                                                                   |
| Cheryl Cidern:     | Okay, well let me, I, I am, I am right not [sic] able to fax it to you but I can certainly fax it to you, um, in the next day or so with the holiday I don't [sic] that I can get it to you before.                               |
| Leland Pavoll:     | Uh, right, that's fine.                                                                                                                                                                                                          |
| Cheryl Cidern:     | Um, what did you say your name was?                                                                                                                                                                                              |
| Leland Pavoll:     | It's Leland L-E-L-A-N-D Pavoll P-A-V-O-L-L.                                                                                                                                                                                      |
| Cherly Cidern:     | Okay and you are with Stephens and Michaels?                                                                                                                                                                                     |
| Leland Pavoll:     | I am. I'm their in-house counsel.                                                                                                                                                                                                |
| Cheryl Cidern:     | Okay and what is the fax number for you?                                                                                                                                                                                         |
| Leland Pavoll:     | (609) 824-9137.                                                                                                                                                                                                                  |
| Cheryl Cidern:     | Okay. I will fax it to you as soon as I, I am able to within the next day or so.                                                                                                                                                 |
| Leland Pavoll:     | Okay, and, um, my turn [sic] what I will do as soon as I get that I'll forward that to Capio indicating we're closing it out as disputed, um, and that this should be updated on your credit report so that, you know, this doesn't happen again. |
| Cheryl Cidern:     | Yeah, at this point yeah it does. Okay. I appreciate it. I will send it to you in the next day or so.                                                                                                                            |
| Leland Pavoll:     | Okay, thank you Cheryl.                                                                                                                                                                                                          |
| Cheryl Cidern:     | Alright thank you, take care, bye, bye.                                                                                                                                                                                          |
| Leland Pavoll:     | No problem, bye.                                                                                                                                                                                                                 |

4

22.     On December 30, 2013, Marcus sent an e-mail message to Pavoll containing the zero balance letter and alleging that Pavoll's December 23, 2013 telephone call to Plaintiff violated the FDCPA.

23.     Subsequently on December 30, 2013, Pavoll replied to Marcus via e-mail, apprising Marcus that Plaintiff's account was now permanently closed and stating that he did not contact Plaintiff to discuss her debt with Ocean Medical, but to obtain the zero balance letter needed by SMA close [sic] Plaintiff's account.

24.     Plaintiff filed the instant lawsuit on January 16, 2014 in the United States District Court for the District of New Jersey.

25.     On February 25, 2015, Plaintiff filed the First Amended Complaint.

(Joint SUMF, ECF No. 20-5.)

## II.     DISCUSSION

### A.     Parties' Positions

Plaintiff asserts that she is entitled to summary judgment pursuant to 15 U.S.C. § 1692c(a)(2) because Pavoll called her in connection with the collection of a debt without her consent even though he knew she was represented by counsel. (Pl.'s Moving Br. 6.) Plaintiff also asserts that she is entitled to summary judgment pursuant to 15 U.S.C. § 1692(e)(11) because Pavoll failed to advise during the telephone call that the communication was from a debt collector. (*Id.* at 11.) According to Plaintiff, the statute explicitly requires that a debt collector disclose in communications that the communication is from a debt collector and "[i]t is not sufficient that the recipient of the communication may have known that the caller was a debt collector" or that "the least-sophisticated debtor would understand that the communication [was] from a debt collector." (*Id.* (citing *Wong v. Green Tree Servicing, LLC*, No. 13-7887, 2014 WL 4418077, at *5-6 (D.N.J. Sept. 5, 2014)).) Plaintiff also asserts that the facts of this case are not in dispute and argues that the only legal determination that the Court needs to make with respect to Defendants' alleged violation of 15 U.S.C. §§ 1692c(a)(2) and (e)(11) is whether Pavoll's December 23, 2013 call was made "in connection with the collection of any debt." (Pl.'s Moving Br. 7.) Plaintiff further argues

that SMA and Pavoll should be found jointly and severally liable for the FDCPA violations. (*Id.* at 12.)

Defendants agree that no dispute of material fact exists in the present case. (Defs.' Moving Br. 7.) Defendants, however, argue that Pavoll called Plaintiff on December 23, 2013, in order to help effectuate the administrative closure of her account, a ministerial process that SMA could not complete without a zero-balance letter. (*Id.*) Defendants assert that when Pavoll contacted Plaintiff on December 23, 2013, her account was not in collection because SMA ceased collection efforts on November 5, 2013, after Plaintiff disputed the account and stated that it was already paid. (*Id.* at 10.) According to Defendants, "[t]he purpose and context of the [December 23rd] call were objectively administrative and benign." (*Id.* at 11 (internal quotation marks omitted).) In addition, Defendants argue that Plaintiff impermissibly attempts to join Pavoll as a defendant because Plaintiff can only maintain a single statutory remedy and her attempt to seek multiple damage awards is impermissible as a matter of law. (*Id.* at 13.) Defendants also argue that Pavoll was an agent of SMA working within the scope of his employment so no remedy is available against him as an individual defendant. (*Id.* at 14.)

### B.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48. Therefore, a party opposing summary judgment must do more than rest upon

allegations, general denials or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The showing required of Plaintiff and Defendants to demonstrate that there is no genuine dispute of material fact differs based on which party bears the burden of proof at trial. In order for Plaintiff to obtain summary judgment, she "must show that, on all the essential elements of [her] case on which [she] bears the burden of proof at trial, no reasonable jury could find for [Defendants]." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003). In order for Defendants to prevail on their summary judgment motion, they must point to the "absence of evidence to support the [Plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**C.     Analysis**

1.     Plaintiff is Entitled to Summary Judgment Against SMA

Plaintiff is entitled to summary judgment with respect to her claims against SMA. Pursuant to 15 U.S.C. § 1692c(a)(2):

> Without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer[.]

15 U.S.C. 1692c(a)(2). In addition, 15 U.S.C. § 1692(e)(11), provides in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section … (11) . . . [t]he failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692(e)(11). Here, the parties agree that the only issue in dispute is whether Pavoll's phone call to Plaintiff was made "in connection with the collection of any debt." The Court finds that under the "least sophisticated debtor" standard, Pavoll's call to Plaintiff was made in connection with the collection of a debt.

7

As noted by the Third Circuit, the FDCPA "is an explicitly remedial statute" that is "construe[d] . . . broadly, so as to effect its purpose." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) (citing *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)). The "least sophisticated debtor" standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000). "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (internal citations omitted). Yet, it nevertheless "prevents liability for bizarre or idiosyncratic interpretations." *Wilson*, 225 F.3d at 354. Significantly, the least sophisticated debtor standard "is an objective one, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen*, 791 F.3d at 419 (*citing Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014)).

The Joint Stipulation of Undisputed Material Facts in the present case reflects that: (1) Plaintiff's account was placed with SMA for collection on September 25, 2013; (2) SMA sent demand letters to Plaintiff's address on September 25 and October 25, 2013; (3) SMA attempted to contact Plaintiff by phone to collect upon the account; (4) Plaintiff contacted SMA on November 5, 2013, regarding the October 25, 2013 correspondence; (5) Plaintiff related that she had a paid in full notice from the hospital for a prior bill that was at a collection company; (6) during one of Plaintiff's conversations with SMA, the representative advised Plaintiff that once she faxed over the zero-balance letter, SMA would confirm it is the same account then close the account; and (7) SMA's notes do not reflect any subsequent calls or correspondence to Plaintiff requesting payment after November 5, 2013. (SUMF ¶¶ 3-10.)

Defendants' argument that Plaintiff's account was not in collection on December 23, 2013, because SMA ceased collection efforts on November 5, 2013, after Plaintiff disputed the account and indicated that it was already paid is not persuasive. While Defendants correctly cite case law for the proposition that a request for payment is strongly indicative of a communication being in connection with the collection of a debt, the fact that SMA's notes do not reflect any requests for payment subsequent to November 5, 2013, does not resolve the issue in this case. Here, portions of the transcript of the December 23, 2013 call leads the Court to find that the call was made in connection with the collection of a debt. During the December 23rd conversation, Pavoll acknowledged that Ocean Medical sold the account to SMA. (*Id.* ¶ 21.) Plaintiff also discussed her previous experience dealing with the alleged debt and indicated that the zero-balance letter "has been given three or four times already and for whatever reason doesn't seem to, to be working" and "at this point it's gotten ridiculous." (*Id.*) At one point in the conversation, Pavoll stated, "everything's been on hold on the account. . . . [W]e'll close it down, but . . . the concern is . . . that this doesn't happen again to you." (*Id.*) Pavoll also stated that as soon as he received the zero-balance letter, he would forward it and indicate that the account was being closed out as disputed. (*Id.*)

Under an objective standard, Pavoll's statements that "everything's been on hold on the account" and "the concern is . . . that this doesn't happen again to you" clearly imply that any potential account "hold" would ultimately be removed and collection activities resumed should Plaintiff fail to provide SMA with the zero-balance letter. In addition, Pavoll's statements that "we'll close it down" and "as soon as I get [the zero-balance letter] I'll forward that . . . indicating we're closing it out as disputed" imply under an objective standard that the collection account was still open during the time of his December 23, 2013 call to Plaintiff. While the transcript of the call appears to reflect Pavoll's attempt to downplay the relevance of the call upon questioning from

Plaintiff, the objective, least-sophisticated consumer would not regard the telephone call as purely ministerial in nature. Based on the remedial nature of the FDCPA, the Court finds that Pavoll's call was made in connection with the collection of a debt. As the Court finds that Pavoll's call to Plaintiff was made in connection with the collection of a debt, the Court grants summary judgment to Plaintiff with respect to her claims pursuant to 15 U.S.C. §§ 1692c(a)(2) and 1692(e)(11).

2.   Neither Party is Entitled to Summary Judgment with respect to Plaintiff's Claims Against Pavoll

Plaintiff and Defendants both argue that they are entitled to summary judgment with respect to Plaintiff's claim against Pavoll. Here, the Court finds the summary judgment briefing deficient and denies both parties' motions as to Pavoll.

In her summary judgment moving brief, Plaintiff cites cases that stand for the proposition that debt collection employees may be found individually liable for violations of the FDCPA. Defendants, on the other hand, cite non-FDCPA cases for the proposition that an employer is vicariously liable for the unlawful conduct of an employee when the conduct occurs within the scope of employment. Both parties, however, neglect to adequately analyze (with citation to relevant authority) the evidentiary burden relating to Defendants' assertion that Pavoll was acting within the scope of his employment when he made the December 23rd telephone call to Plaintiff.

In addition, Plaintiff argues in her summary judgment moving brief that:

[t]here is no dispute that it was Defendant Pavoll's affirmative acts and omissions that gave rise to the FDCPA violations at issue here. Furthermore, it is clear from Pavoll's title as Customer Contact Complaint Person in the company that he was involved in the company's day to day operations. This is further evidenced from the fact that this office was put directly in contact with Mr. Pavoll when we had a complaint. Accordingly both Defendants are jointly and severally liable.

(Pl.'s Moving Br. 13.)

The Joint Statement of Undisputed Material Facts, however, is largely silent as to Pavoll's overall role at SMA. The Joint Statement of Undisputed Material Facts reflects that: (1) Pavoll

10

served as SMA's in-house counsel; (2) Pavoll became involved in the case after Ari Marcus, Plaintiff's attorney, contacted SMA and requested to speak with its in-house compliance representative; and (3) Marcus and Pavoll spoke on the phone and exchanged numerous e-mail messages regarding Plaintiff's allegation that SMA failed to send Plaintiff an initial demand letter. (SUMF ¶¶ 12, 16-18.) But the Joint Statement of Undisputed Material Facts is largely silent with respect to: Pavoll's alleged title of "Customer Contact Complaint Person"; Pavoll's day-to-day responsibilities; whether Pavoll has a relationship with SMA beyond serving as its in-house counsel; and whether Pavoll exercises any degree of control over SMA and its collection activities.

In *Pollice v. National Tax Funding, L.P.*, the Third Circuit found that the general partner of a debt collection limited partnership may be held vicariously liable for the partnership's conduct under the FDCPA. 225 F.3d 379, 404-05 (3d Cir. 2000). In addition, several district courts in the Third Circuit have found that employees of a debt collection agency may be found individually liable under the FDCPA. Relying on *Pollice*, the District Court for the Eastern District of Pennsylvania in *Piper v. Portnoff Law Associates* denied defendants' motion for summary judgment where plaintiff demonstrated that individual defendants signed or authorized others to sign debt collection letters and were involved in the debt collector's day-to-day business operations. 274 F. Supp. 2d 681, 689 (E.D. Pa. 2003). In *Albanese v. Portnoff Law Associates*, the court similarly found that an attorney who signed or directed others to sign many communications and took affirmative actions with respect to plaintiff's account acted as a debt collector within the meaning of the act and could be subject to individual liability under the FDCPA. 301 F. Supp. 2d 389, 400 (E.D. Pa. 2004).

Here, the Court finds Defendants' assertion that Plaintiff attempts to seek multiple awards unpersuasive as Plaintiff seeks to hold SMA and Pavoll jointly and severally liable and acknowledges that she is entitled to a single statutory damages award. Nevertheless, the facts of

the cases in which courts found individual employee liability are more well-defined than the facts of the present case. Even the magistrate judge's order granting Plaintiff's motion to amend the complaint noted that the factual record in the present case was not well-developed. (Feb. 19, 2015 Order 9, ECF No. 16.) In her decision, the magistrate judge discussed the division between the circuits as to whether an employee falls within the statutory definition of a debt collector and may be held personally liable under the FDCPA for acts committed within the scope of employment. (*Id.* at 8.) After discussing various decisions, the magistrate judge stated:

> The courts rendering the decisions . . . did so at a different procedural stage and based upon a more complete factual record. . . . Whether Pavoll's conduct and involvement ultimately subjects him to individual liability, however, is a factual question more appropriately determined after the development of a factual record.

(*Id.* at 9.)

It appears that in their rush to summary judgment in this case, the parties neglected to develop a sufficient factual record as to Pavoll. Under Plaintiff's expansive interpretation of the FDCPA, any time an active employee of a debt collection agency violates any provision of the FDCPA, the employee would be working outside the scope of his employment and could be found individually liable. If Plaintiff's interpretation was, indeed, the current state of the law, surely she could point to a decision from the Third Circuit Court of Appeals that provides such an interpretation. This Court is persuaded that a more nuanced and fact-specific analysis is required in order for the Court to find Pavoll individually liable for the FDCPA violations in the present case. As an Eastern District of Pennsylvania decision provides, "it appears unlikely that an employee may be held liable as a debt collector under the FDCPA merely for playing an active role in debt collection activities." *Yentin v. Michaels, Louis & Assocs.*, No 11-088, 2011 WL 4104675, at *6 (E.D. Pa. Sept. 15, 2011). Based on the factual record before it and the deficiencies in the briefing as to agency and *respondeat superior*, the Court denies both parties' summary judgment motions with respect to Pavoll.

III.     <u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is granted as to Plaintiff's claims against SMA and denied without prejudice as to Plaintiff's claims against Pavoll. Defendants' Motion for Summary Judgment is denied with respect to SMA and denied without prejudice with respect to Pavoll. An order consistent with this Memorandum Opinion will be entered.

<u>s/ Michael A. Shipp</u>
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

<u>Dated:</u>  November 30, 2015